IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TOMMY EDGAR, }<br>}<br>  Plaintiff, }<br>} <br>v. }<br>}<br>DISABILITY REINSURANCE }<br>MANAGEMENT SERVICES, INC., et }<br>al., }<br>}<br>  Defendants. } | CIVIL ACTION NO.<br>09-AR-1562-S |

### MEMORANDUM OPINION AND ORDER

This court has previously held, and still believes, that Rule 56, F.R.Civ.P., was not designed for, and is only awkwardly used for, the resolution of disputes over entitlement to disability benefits under the Employee Retirement Security Act of 1974, 29 U.S.C. §§ 1001, *et seq.* ("ERISA"). Nevertheless, the case law as it has evolved since 1974, despite the variants and contradictions introduced to the hodge—podge by the courts forced to deal with it, overlooks the plain language Congress used in ERISA. ERISA, properly understood, simply provides a trial *de novo* in all cases in which an application for benefits under an ERISA plan is finally turned down by the plan functionary. Section 502(a)(1)(B) of ERISA (29 U.S.C. § 1132(a)(1)(B)) straightforwardly says that any participant in a plan governed by ERISA can bring a **"civil action"** **"to recover benefits due him under the terms of his plan"**. (emphasis added). What is a "civil action", if not a lawsuit? The courts have substituted for the trial *de novo* unequivocally

mandated by Congress a procedure akin to, and borrowed from, the review of an administrative law judge's decision on a Social Security disability benefits claim.  The words "judicial review" nowhere appear in ERISA.  "Judicial review" is expressly provided for in a section of the Social Security Act, 42 U.S.C. § 405(g), which is itself entitled "**Judicial Review**".  ERISA complaints and Social Security appeals are different animals.

The above-entitled case perfectly illustrates the problem inherent in an attempt to use Rule 56 as the device for resolving an ERISA controversy, especially when only one of the parties files a motion for summary judgment, and the parties do not agree to submit on the record.  In the instant case, defendants, Disability Reinsurance Management Services, Inc. and Boston Mutual Life Insurance Co. ("defendants"), have jointly moved for summary judgment.  Defendants are represented by the same counsel, and agree that they are to be treated as one.  Siamese twins do not ask to be separated if they are happy together.

In the joint report of parties' planning meeting, the parties on October 8, 2009, expressed a stark difference of opinion as to the procedure under which their dispute must be resolved.  The court, at the present instant, cannot resolve their **ultimate** dispute, but the court **must** resolve the difference of opinion as to **how to proceed** at this juncture.  Defendants' position on October 8, 2009, was that "the Court's review of the claim decision is

limited to the administrative record and no discovery is appropriate beyond production of the administrative record with the possible exception of information relating to Plaintiff's income and other financial information that would be pertinent to Plaintiff's ongoing claim for benefits".  On the other hand, plaintiff, Tommy Edgar ("plaintiff"), on October 8, 2009, took the position that limited discovery should be allowed and that the *de novo* standard of review applies.  On October 9, 2009, the court entered its scheduling order, adopting the parties' joint suggestion of dates for early disclosure of expert witnesses. Plaintiff was to disclose experts by February 12, 2010, and defendants by March 12, 2010.  Those dates have passed.  What the purpose of disclosing experts was if a **trial** was not contemplated is not explained by defendants.  Plaintiff has only implicitly and enigmatically attempted to explain it.  The court ordered a discovery deadline of July 16, 2010, and a dispositive motion deadline of August 20, 2010.  The lengthy time period between entry of the scheduling order and the deadline for completing discovery suggests that some discovery outside the administrative record was contemplated.  Exactly what discovery has actually been undertaken is not known by the court, because there have been no objections to any discovery requests and no motions to compel.

   Although the parties did not request a planning meeting with the court before the court entered its scheduling order, the court

eventually sensed what it should have sensed much earlier, namely, that the parties have diametrically opposing views about the so-called "standard of review".  When the light dawned, the court ordered a conference on May 24, 2010, for the purpose of exploring and deciding upon the proper "standard of review".  On June 8, 2010, defendants formally conceded that the "standard of review" is *de novo*.  The reason for this concession may be that defendants' "discretionary clause", a provision now found in virtually every ERISA disability plan, and given overriding significance by the Supreme Court in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948 (1989), is defective.  Perhaps defendants' draftsman did not understand *Bruch*.

If defendants had admitted *ab initio* that the "standard-of-review" is *de novo*, and had convinced the court that the case must be decided on the administrative record alone, this case would have been decided much sooner, and with less expense.  An early motion for partial summary judgment on the "standard of review", would have helped.

The joint report of parties filed on October 8, 2009, requested, *inter alia*, a "final pretrial conference with the Court 30 days before **trial**"; that "final lists of **trial** witnesses and experts under Rule 26(a)(3) must be filed by the parties 30 days before **trial**"; that "objections be filed within 10 days after a service of final list of trial evidence"; and that "the case should

be ready for **trial** by October 4, 2010" (emphasis added).  The scheduling order entered on October 9, 2010, provided, *inter alia*: "All *in limine* motions based on *Daubert* must be filed prior to the final pre-trial conference."  The court's reference to *Daubert* was without meaning unless a challenge by one party of the credentials and opinions of the opponent's experts was a future possibility.  There can be no gate-keeping role for the court if an administrative record provides the only basis for decision.

The parties' planning report concluded with these revealing counter-expressions: "Defendants request a trial on briefs because this is an ERISA case and the Court's review is limited to the administrative record", whereas, "Plaintiff requests a bench trial and states that the trial is expected to last two days".  Why would defendants even speak of a "**trial**"?  The word "**trial**" does not fit an appellate review. Who ever heard of a "**trial**" in the Supreme Court, unless in a conflict between States?  The "summary judgment" concept is not employed in appellate review any more than is a "trial".  Defendants must have meant to be requesting oral argument on anticipated motions for summary judgment.

Defendants timely filed their Rule 56 motion, now under submission.  Perfectly consistent with plaintiff's unwaivering position, he did not file a motion for summary judgment.  Instead, he argues that there are disputes of material fact that preclude summary judgment, either for him or for defendants.

No citation is needed to support the long established acknowledgment by the federal courts, including the Supreme Court and the Eleventh Circuit, that on its face Rule 56 places upon the movant the burden of demonstrating that there are no disputes of material fact and that movant, on those facts, is entitled to judgment as a matter of law.  The presentation of evidence by the non-movant, together with all reasonable inferences to be drawn therefrom, is to be treated as true for the purposes of deciding whether there is a genuine issue of material fact.  It is not surprising that defendants' rendition of the evidence (lifted from the  administrative record) is only supportive of, and consistent with, the conclusion, adverse to plaintiff, that was reached by the defendants' ERISA plan decision-makers.  Defendants necessarily argue that upon a *de novo* consideration of the administrative record, they were **right** to deny plaintiff's claim for disability benefits.  The evidence employed by the claim evaluators to reach their decision is elaborately described by defendants. There is no recognition by defendants of *contra proferendum*, a rule that applies to contract interpretation upon any *de novo* consideration of a contract.  Defendants have no trouble in construing in their favor the contract they drafted. Defendants' evidence, of course, may prove ultimately successful at trial.  It need not be repeated or analyzed here.  Plaintiff's evidence proffered in opposition to defendants' Rule 56 motion is also detailed, but plaintiff

concentrates upon his argument that there **are** disputes of material fact, rendering Rule 56 inappropriate.  This court agrees with plaintiff on this score.

The parties have not cited a single Eleventh Circuit or Supreme Court case, and this court has found none, making a persuasive argument that ERISA alters the routine way Rule 56 motions are to be treated and decided.  It is somewhat strange that there is such a dearth of jurisprudence attempting to solve this procedural anomaly.  There is some academic comment on the subject, but this court finds nothing to compare with the following thoughtful treatment of the problem by the Seventh Circuit in *Krolnik v. Prudential Ins. Co.*, 570 U.S. 841, 843 (7th Cir. 2009), a case that fits this case like a glove:

> *Firestone* holds that "*de novo* review" is the norm in litigation under ERISA.  Cases such as this show that "*de novo* review" is a misleading phrase.  The law Latin could be replaced by an English word, such as "independent."  And the word "review" simply has to go.  For what *Firestone* requires is not "review" of any kind; it is an independent *decision* rather than "review" that *Firestone* contemplates.  The Court repeatedly wrote that litigation under ERISA by plan participants seeking benefits should be conducted just like contract litigation, for the plan and any insurance policy are contracts.  489 U.S. at 112-13, 109 S.Ct. 948.  In a contract suit the judge does not "review" either party's decision.  Instead, the court takes evidence (if there is a dispute about a material fact) and makes an independent decision about how the language of the contract applies to those facts.
>
> That's well understood in insurance litigation under the diversity jurisdiction.  If the plaintiff says that a fire at his home destroyed a valuable painting, and the insurer declines indemnity after finding that (a) there was no such painting, and (b) the fire was caused by

7

> arson, the federal judge won't ask what evidence the insurer considered. The court will decide for itself where the truth lies. A judge would not dream of forbidding the parties to take discovery, let alone of rejecting affidavits that did not depend on discovery. Evidence is essential if the court is to fulfill its fact-finding function. Just so in ERISA litigation. When review is deferential—when the plan's decision must be sustained unless arbitrary and capricious—*then* review is limited to the administrative record. See *Perlman v. Swiss Bank Corp.*, 195 F.3d 975 (7th Cir.1999). Otherwise, however, the court decides on the record made in the litigation. And, if material evidence conflicts, then there must be a trial.

(emphasis in original). The Seventh Circuit denied rehearing and rehearing *en banc*.

What can a trial court do when there is a legitimate dispute of material fact in an ERISA benefits case in which the parties have not agreed to submit on the administrative record? The Seventh Circuit was entirely correct in *Krolnik* when it held that an ERISA benefits claim is nothing more or less than a claim for breach of contract. Rule 56 does not lend itself to making credibility determinations or decisions about ambiguous language when witnesses disagree about crucial facts, such as the conflicting medical findings in this case. At **trial**, the burden of proof will, of course, be on the plaintiff, as in any contract case, to prove by a preponderance of the evidence the terms of the contract, and that the contract was materially breached. The court assumes that plaintiff understands his obligation.

This court does not pretend to have the right, much less the ability, to decide a controversy based upon unsworn opinions and

unseen, uncross-examined witnesses. From experience as a trial lawyer and as a judge, this court knows that a trier-of-fact may find that the "light was green" on the basis of **one** sharp-eyed, disinterested witness, even though he is contradicted by **three** other witnesses, all of whom say the "light was red", when one of the three was drunk, one is the best friend of the injured party, and one is vision-impaired. **Believability** is something that cannot be fairly determined on a cold record that is made up of disputed renditions of the evidence upon which differing conclusions can reasonably be reached.

Defendants' final brief in response to plaintiff's brief spends little time trying to refute plaintiff's contention that Rule 56 is not the appropriate vehicle for a decision in this case. Instead, defendants reiterate the evidence and arguments that accompanied their Rule 56 motion, and upon which they may very well prevail at trial. Oral argument would be fruitless at this time. Material facts are in dispute, and defendants' denial of benefits is not to be accorded deference. The inevitable, structural conflict-of-interest recognized in *Metropolitan Life v. Glenn*, 552 U.S. 1161, 128 S.Ct. 1117 (2008), may be at play at trial, but it is not relevant now. Defendants' argument that Rule 56 disposition is mandatory under the present circumstances makes no sense. If the "standard of review" had been "abuse of discretion" or "arbitrary and capricious" (synonyms in the Eleventh Circuit), the

court would be bound by precedent (with which it respectfully disagrees), and would have had to decide this dispute without a trial on the merits, whether under Rule 56 or under the "made-up" procedure employed by some courts.  A *de novo* standard requires an entirely different approach.  This standard has been **statutorily** mandated by Michigan and Montana where "discretionary clauses" are forbidden.  *See Am. Council of Life Insurers v. Ross*, 558 F.3d 600 (6th Cir. 2009), and *Standard Insurance Company v. Lindeen*, 584 F.3d 837 (9th Cir. 2009), *cert.den.* ____ U.S. ____, 130 S.Ct. 3275 (2010).  Why Alabama has not followed Michigan and Montana is an academic question because the way to look at this dispute is anew.

For the foregoing reasons, defendants' motion for summary judgment is DENIED.  This opinion would have required a fist full of pages if the court had been forced under the deferential standard to struggle to explain why the evidence does provide or does not provide a rational basis for defendants' denial decision.  The fact that the standard here is *de novo*, or, as the Seventh Circuit says, "**independent**", locks in the requirement that the case be tried on the merits.

ERISA badly needs revision, but this court is not Congress and is neither authorized to rewrite ERISA nor to amend the Federal Rules of Civil Procedure.

The case is hereby SET for pretrial conference in Courtroom 4B, **at 9:30 a.m., September 30, 2010**, in accordance with the

attached pretrial instructions.

DONE this 17th day of September, 2010.

                                                    _____
                                                    WILLIAM M. ACKER, JR.
                                                    UNITED STATES DISTRICT JUDGE